# United States District Court

FOR THE
NORTHERN DISTRICT OF CALIFORNIA

VENUE: SAN JOSE

FILED
2010 JUN 24 P 4:53

PVT

E-filing

UNITED STATES OF AMERICA,

V.

# CR 10 0495 JF

SHAWN D. HOGAN,

DEFENDANT(S).

## INDICTMENT

VIOLATIONS: 18 U.S.C. § 1343 - Wire Fraud; 18 U.S.C. § 981 (a)(1)(C) and 28 U.S.C. § 2461 (c) - Criminal Forfeiture

A true bill.

_____ Foreman

Filed in open court this 24 day of June, 2010

FRANK JUSTILIANO Clerk

Bail, $ Summons for 7-22-10

JOSEPH P. RUSSONIELLO (CSBN 44332)
United States Attorney

FILED
2010 JUN 24 P 4:54

E-filing

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CR 10 0495 JF |
| Plaintiff, ) | VIOLATIONS: 18 U.S.C. § 1343 — Wire Fraud; 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) — Criminal Forfeiture |
| v. ) | |
| SHAWN D. HOGAN, ) | |
| Defendant. ) | SAN JOSE VENUE |

### INDICTMENT

The Grand Jury charges:

At all times relevant to this Indictment:

### BACKGROUND

**EBay, Inc.**

1. EBay, Inc. ("eBay") was a corporation headquartered in San Jose, California. EBay owned and operated a popular on-line marketplace that enabled people to sell goods or services locally, nationally, and internationally using the Internet via eBay's websites (collectively referred to herein as "eBay.com"). One of eBay's most popular services was the on-line auction, which allowed registered sellers to list goods or services for sale on eBay.com. Sellers commonly provided descriptions and photographs of the items posted for sale, and registered buyers could bid on-line for these items prior to the set end date

INDICTMENT
[HOGAN]

and time of the auction. In some circumstances, registered buyers could purchase items without engaging in an auction through eBay's "Buy It Now" option. EBay earned revenue each time a seller posted an item for sale on eBay.com, as well as each time a seller sold an item on eBay.com.

**EBay's Affiliate Program**

2. EBay developed what is referred to herein as the "Affiliate Program." The Affiliate Program was a means by which eBay worked with third-party marketers to "drive" Internet "traffic" to eBay.com.

3. Under eBay's Affiliate Program, it was intended that a third-party affiliate would send visitors to eBay.com from a website associated with the affiliate, and would do so (at least in theory) by suggesting (in some way) that the visitor "click" on a "link" to eBay.com located on the affiliate's website. If, within specified time periods, such visitors to eBay.com became new active users, won auctions, or made Buy-It-Now purchases on eBay.com, the affiliate received compensation from eBay. A "new active user" was defined to include a user who both set up a new eBay.com account and then placed a bid (whether that bid was a winning bid or not). For purposes of this Indictment, the actions of becoming a new active user, winning an auction, and making a purchase are referred to collectively as "revenue actions."

4. The Affiliate Program defined the rates and amounts of compensation that eBay paid to an affiliate. These rates and amounts of compensation were based on the monthly totals of revenue actions attributable to that affiliate. For instance, if 1 to 49 of the individuals the affiliate referred to eBay became new active users within 30 days, eBay paid the affiliate $25.00 per new user. As another example, if the individuals that the affiliate referred to eBay won auctions for items totaling $99.99 in value within seven days, eBay paid the affiliate 50% of the revenue earned by eBay on those transactions. Each of these rates of compensation increased as the total number of new active users and the total amount of sales attributable to referrals from a particular affiliate increased.

5. In order to become a member of the Affiliate Program, a would-be affiliate

INDICTMENT
[HOGAN]                                   -2-

1 registered through another company, Commission Junction, Inc. ("CJ"). EBay contracted
2 with CJ not only to register affiliates, but also to assist affiliates with their accounts and to
3 monitor affiliates' activity to ensure quality control and compliance with the rules and
4 regulations governing the Affiliate Program. CJ generally paid affiliates on a monthly
5 basis, with funds provided by eBay.

**Shawn Hogan and Digital Point Solutions**

7  6.  The defendant Shawn Hogan ("Hogan") was an individual who resided in the Southern District of California. Digital Point Solutions was a corporation that was solely owned by Hogan.

10  7.  Digital Point Solutions was a member of the Affiliate Program. In 2006, Digital Point Solutions received approximately $10,500,000 in compensation from the eBay Affiliate Program in the United States. Between January and June 2007, Digital Point Solutions earned more than $5,000,000 in compensation from the eBay Affiliate Program in the United States. As of approximately June 2007, Digital Point Solutions was the number-one producing account in the Affiliate Program. In other words, based on data provided to eBay, Digital Point Solutions was purported to be the affiliate that drove the most revenue-producing traffic to eBay.com.

**Affiliate Program Tracking**

19  8.  EBay used an automated tracking process in an effort to ensure that affiliates received appropriate compensation. This tracking process utilized "cookies."

21  9.  In Internet parlance, the term "cookie" refers to a text file that is generated by a website's servers when a user on a remote computer accesses it. The cookie is sent to the user's computer by the website's servers, and is thereafter placed (or "dropped") on that user's computer. The cookie includes information such as user preferences for a particular user, connection data (including time and date of use), records of user activity (including files accessed, services used, or "shopping cart" contents), and account information (including usernames and passwords). The information contained in that cookie is then transmitted by the user's computer to the website on subsequent visits to

INDICTMENT
[HOGAN]                          -3-

1  that website by the user so that, based on that information, the website may better serve the
2  user's particular needs and preferences.
3      10. In the eBay Affiliate Program, when a visitor was referred to eBay.com from
4  an affiliate website, eBay "dropped" a "cookie" on that user's computer. This cookie
5  contained information that was used to identify the Affiliate Program member that had
6  directed that particular user to eBay.com. This information is referred to herein
7  collectively as the "Affiliate ID."
8      11. If and when that user later engaged in a revenue action on eBay.com, the
9  Affiliate ID would be transmitted by the user's computer to eBay. An automated tracking
10 process performed the analysis to determine whether the revenue action had occurred
11 within the specified time frames.
12     12. If cookies from more than one affiliate were present on the user's computer
13 at the time of the revenue action, the affiliate identified in the most recent cookie dropped
14 on the user's computer was credited with the revenue action. Similarly, if there was no
15 qualifying cookie on the user's computer at the time of the revenue action, then no affiliate
16 was credited.
17     13. This process was intended to ensure that affiliates in the Affiliate Program
18 received appropriate compensation from eBay based on the rates and amounts of
19 compensation defined by the Affiliate Program.

**Affiliate Program Terms and Conditions**

21     14. EBay affiliates such as Digital Point Solutions agreed to certain terms and
22 conditions required by eBay in order to participate in the Affiliate Program. These terms
23 and conditions provided that the affiliate would not deliver any eBay-related cookies or
24 other tracking tags to the computers of the affiliate's user when the user was merely
25 viewing the affiliate's advertisements or while the affiliate's applications were merely
26 active or open on the affiliate's user's computer.
27     15. In addition, eBay affiliates such as Digital Point Solutions accepted the
28 terms of CJ's Publisher Service Agreement ("PSA") at the time of the affiliate's

INDICTMENT
[HOGAN] -4-

registration in the Affiliate Program. The PSA informed affiliates that certain behavior was not acceptable and was grounds for removal from the Affiliate Program. Prohibited behavior included generating visitor clicks using any "device, program, [or] robot." The PSA also required each affiliate to provide CJ and eBay with accurate and up-to-date information about the affiliate's promotional methods.

**"Cookie Stuffing"**

16. For purposes of this Indictment, "cookie stuffing" is the act of depositing, or causing to be deposited, a cookie containing an Affiliate ID onto a user's computer without that user having clicked on an advertisement or link.

## THE SCHEME

17. As set forth more fully below, beginning on a date unknown to the Grand Jury, but no later than in or about mid-2005, and continuing to in or about June 2007, in the Northern District of California and elsewhere, the defendant,

SHAWN D. HOGAN,

did knowingly devise and intend to devise, and did participate in, a material scheme and artifice to defraud, and to obtain money and property by means of materially false, misleading, and fraudulent pretenses, representations, omissions, and promises, which scheme and artifice is summarized below.

18. It was part of the scheme and artifice that, through various means, the defendant disseminated on a large number of web pages computer code that, when those web pages were viewed by a computer user, was designed to cause that user's computer to make a request to eBay's home page merely for the purpose of prompting eBay's servers to serve up a cookie, which would then be "stuffed" onto the user's computer. These cookies contained information that identified an Affiliate ID of Digital Point Solutions. In such situations, the human user never actually clicked on an eBay advertisement or link on Hogan's affiliate websites.

19. It was further part of the scheme and artifice that, in such situations, the computer code prevented eBay's home page from actually "loading" on the user's

INDICTMENT
[HOGAN]                       -5-

computer screen. Accordingly, the human user never actually viewed eBay's home page when an eBay cookie identifying Digital Point Solutions was stuffed onto the user's computer. Indeed, the human user never knew that the user's computer had made a request to the website (i.e., eBay.com) that had served up the cookie to be stuffed onto the computer.

20. It was further part of the scheme and artifice that the defendant attempted to place this computer code on a large number of web pages, including web pages that were not directly affiliated with Digital Point Solutions, all for the purpose of increasing the number of computers onto which cookies containing information identifying the Affiliate IDs of Digital Point Solutions would be stuffed.

21. It was further part of the scheme and artifice that the defendant had the expectation and intention that many of the users whose computers had had cookies stuffed on them would thereafter visit eBay.com and engage in revenue actions. If these revenue actions were within the time periods specified in the Affiliate Program, Digital Point Solutions would receive compensation from eBay with respect to those events. The defendant had the expectation and intention that these visits to eBay.com would be of each user's own accord, and would be separate and apart from any actions taken by the defendant to "drive" those users to eBay.com.

22. It was further part of the scheme and artifice that, in the situations described in the previous paragraph, the defendant caused these users' computers to transmit misrepresentations of material facts to eBay, in that these users' computers transmitted information contained in cookies stuffed onto those users' computers that falsely represented to eBay that the defendant's affiliate had originally directed the users to eBay.com and that, by implication, the affiliate was entitled to compensation from eBay if the users engaged in revenue actions within the specified time periods. In fact, the affiliate was not entitled to compensation from eBay with respect to the vast majority of revenue actions.

23. It was further part of the scheme and artifice that the defendant took certain

INDICTMENT
[HOGAN]                                    -6-

actions in order to prevent eBay and CJ from detecting his fraudulent scheme. These actions included, but were not necessarily limited to avoiding stuffing cookies on computers that appeared to be located in San Jose, California (the location of eBay's headquarters) or in Santa Barbara, California (the location of CJ's headquarters).

24. It was further part of the scheme and artifice that the defendant made misrepresentations and omissions of material facts to eBay and/or Commission Junction with respect to his activities. For example, in or about September 2005, when questioned about possible cookie stuffing by a CJ employee, the defendant falsely attributed the suspicious activity to "coding errors."

COUNTS ONE THROUGH TEN: 18 U.S.C. § 1343 – Wire Fraud

25. The factual allegations in paragraphs 1 through 24 are re-alleged and incorporated herein as if set forth in full.

26. Beginning on a date unknown to the Grand Jury, but by no later than in or about mid-2005 and continuing to in or about June 2007, in the Northern District of California, and elsewhere, the defendant,

SHAWN D. HOGAN,

did knowingly devise and intend to devise and intend to devise, and did participate in, a material scheme and artifice to defraud eBay and Commission Junction as to a material matter and to obtain money and property by means of materially false, misleading, and fraudulent pretenses, representations, omissions, and promises, and by the concealment of material facts.

USE OF THE WIRES

27. On or about the dates listed below, for the purpose of executing the scheme and artifice to defraud set forth above, and attempting to do so, the defendant,

SHAWN D. HOGAN,

did knowingly transmit and cause to be transmitted, in interstate and foreign commerce, by means of a wire communication, certain writings, signs, and signals, that is, transmissions of cookies from an eBay computer server in San Jose, CA, to computers and computer

INDICTMENT
[HOGAN]                              -7-

servers in other states and countries, as exemplified within the separate counts below, where in each instance the individual did not click on an eBay advertisement or link:

| COUNT | DATE | LOCATION OF COMPUTER OR COMPUTER SERVER AND IP ADDRESS OF USER | NATURE OF WIRE COMMUNICATION |
|---|---|---|---|
| One | 06/07/07 | Michigan<br>IP address 82.56.96.207 | Cookie identifying Affiliate ID 2225635, pertaining to Digital Point Solutions |
| Two | 06/07/07 | Virginia<br>IP Address 205.188.116.202 | Cookie identifying Affiliate ID 2225634, pertaining to Digital Point Solutions |
| Three | 06/08/07 | Pennsylvania<br>IP Address 68.57.17.37 | Cookie identifying Affiliate ID 2225634, pertaining to Digital Point Solutions |
| Four | 06/08/07 | Virginia<br>IP Address 64.12.117.8 | Cookie identifying Affiliate ID 2225634, pertaining to Digital Point Solutions |
| Five | 06/09/07 | Arizona<br>IP Address 71.210.107.53 | Cookie identifying Affiliate ID 2225635, pertaining to Digital Point Solutions |
| Six | 06/09/07 | Virginia<br>IP Address 172.141.78.191 | Cookie identifying Affiliate ID 2225634, pertaining to Digital Point Solutions |
| Seven | 06/10/07 | Pakistan<br>IP Address 203.101.184.6 | Cookie identifying Affiliate ID 2225634, pertaining to Digital Point Solutions |
| Eight | 06/10/07 | Virginia<br>IP Address 64.12.117.6 | Cookie identifying Affiliate ID 2225634, pertaining to Digital Point Solutions |
| Nine | 06/11/07 | Utah<br>IP Address 206.40.234.218 | Cookie identifying Affiliate ID 2225634, pertaining to Digital Point Solutions |
| Ten | 06/11/07 | Virginia<br>IP Address 152.163.101.9 | Cookie identifying Affiliate ID 2225635, pertaining to Digital Point Solutions |

All in violation of Title 18, United States Code, Section 1343.

FORFEITURE ALLEGATION: 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)

28. The preceding factual allegations of this Indictment are hereby re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture pursuant to the provisions of 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. 2461(c).

INDICTMENT
[HOGAN]   -8-

29. Upon conviction of one or more of the offenses alleged in Counts One through Ten of this Indictment, the defendant,

SHAWN D. HOGAN,

shall forfeit to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) all property constituting, and derived from, proceeds the defendant obtained, directly and indirectly, as the result of those violations.

30. If any of the aforementioned property, as a result of any act or omission of the defendant —

a. cannot be located upon the exercise of due diligence;
b. has been transferred or sold to, or deposited with, a third person;
c. has been placed beyond the jurisdiction of the Court;
d. has been substantially diminished in value; or
e. has been commingled with other property that cannot be divided without difficulty;

any and all interest defendant has in other property shall be vested in the United States and forfeited to the United States pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

DATED: June 24, 2010

A TRUE BILL.

*Lynda Benjamin*
FOREPERSON

JOSEPH P. RUSSONIELLO
United States Attorney

*/s/ Douglas Wilson*
J. DOUGLAS WILSON
Acting Chief, Criminal Division

(Approved as to form: *Waldinger* )
AUSA WALDINGER

INDICTMENT
[HOGAN]  -9-

AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT  ☐ INFORMATION  ☑ INDICTMENT
☐ SUPERSEDING

**OFFENSE CHARGED**

Title 18, United States Code, Section 1343 –
Wire Fraud (Ten Counts)

Forfeiture Allegation

☐ Petty
☐ Minor
☐ Misdemeanor
☑ Felony

E-filing

**PENALTY:**
Maximum term of imprisonment of 20 years, maximum fine of $250,000 or twice the gross gain/loss (whichever is greater), 3 years of supervised release, $100 special assessment (per count)

Name of District Court, and/or Judge/Magistrate Location
**NORTHERN DISTRICT OF CALIFORNIA**

**DEFENDANT**
▶ SHAWN D. HOGAN

**DISTRICT COURT NUMBER**
CR 10 0495 JF

---

**PROCEEDING**

Name of Complainant Agency, or Person (& Title, if any)
Federal Bureau of Investigation

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
☐ U.S. ATTORNEY  ☐ DEFENSE
SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant
MAGISTRATE CASE NO.

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

Name and Office of Person Furnishing Information on this form   Joseph P. Russoniello
☑ U.S. Attorney  ☐ Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned)  KYLE F. WALDINGER

**DEFENDANT**

**IS NOT IN CUSTODY**
Has not been arrested, pending outcome this proceeding.
1) ☑ If not detained give date any prior summons was served on above charges ▶

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

**IS IN CUSTODY**
4) ☐ On this charge
5) ☐ On another conviction  } ☐ Federal  ☐ State
6) ☐ Awaiting trial on other charges
If answer to (6) is "Yes", show name of institution

Has detainer ☐ Yes    If "Yes"
been filed?   ☐ No     give date filed    Month/Day/Year

DATE OF ARREST ▶    Month/Day/Year
Or... If Arresting Agency & Warrant were not

DATE TRANSFERRED ▶    Month/Day/Year
TO U.S. CUSTODY

☐ This report amends AO 257 previously submitted

---

**ADDITIONAL INFORMATION OR COMMENTS**

**PROCESS:**
☑ SUMMONS  ☐ NO PROCESS*  ☐ WARRANT    Bail Amount: _____

If Summons, complete following:
☑ Arraignment  ☑ Initial Appearance
Defendant Address: See attached

* Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time: July 22, 2010, 9:30 a.m.    Before Judge: San Jose Duty Mag.

Comments:

Address for summons for defendant Shawn D. Hogan:

c/o William Keane
Farella, Braun & Martel
Russ Building
235 Montgomery, 17th Floor
San Francisco, California 94104