William P. Keane, Esq. (State Bar No. 124756)
wkeane@fbm.com
Jessica K. Nall (State Bar No. 215149)
jnall@fbm.com
Christoffer Lee, Esq. (State Bar No. 280360)
clee@fbm.com
FARELLA BRAUN + MARTEL LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
Telephone: (415) 954-4400
Facsimile: (415) 954-4480

Attorneys for Defendant
SHAWN HOGAN

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>    vs.<br><br>SHAWN HOGAN,<br><br>        Defendant. | No. CR 10-0495 EJD-1<br><br>**DEFENDANT'S NOTICE AND MOTION TO SUPPRESS EVIDENCE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: October 15, 2012<br>Time: 3:00 p.m.<br>Court: Hon. Edward J. Davila<br>       Courtroom 4, 5th Floor<br>       San Jose Courthouse<br>       280 South 1st Street<br>       San Jose, CA 95113<br><br>Jury Trial Set for January 15, 2013 |

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

**DEFENDANT'S MOTION TO SUPPRESS**
United States v. Hogan, CR 10-0495 EJD-1

25429\3291347.1

# TABLE OF CONTENTS

Page

NOTICE OF MOTION AND MOTION .................................................................................... 1
INTRODUCTION .......................................................................................................................... 2
I.    FACTUAL BACKGROUND .............................................................................................. 2
ARGUMENT .................................................................................................................................. 4
    A.    Legal Standard ......................................................................................................... 4
    B.    Application Of The Ninth Circuit's *Craighead* Factors Show That Mr. Hogan Was 'In Custody' Because A Reasonable Person In His Position Would Not Have Felt Free To Terminate The Interrogation .................................. 6
        1.    The Presence Of Nine Armed FBI Agents Led Mr. Hogan To Reasonably Believe He Was In Custody ....................................................... 6
        2.    Mr. Hogan Believed He Was In Custody Because Of The Substantial Restrictions On His Movement ...................................................... 8
        3.    FBI Agents Isolated Mr. Hogan In His Apartment ................................... 10
        4.    Mr. Hogan Was Not Adequately Informed Of His Right To Terminate The Interview ............................................................................. 11
    C.    Additional Factors Indicate That Mr. Hogan Was In Custody Under The Totality Of The Circumstances ............................................................................. 12
        1.    Mr. Hogan's Contact With Law Enforcement Was Involuntary .............. 12
        2.    Law Enforcement Confronted Mr. Hogan With Alleged Evidence Against Him ................................................................................................ 12
        3.    The Length Of The Interrogation, Which Was More Than One Hour, Indicates That Mr. Hogan Was In Custody ................................... 13
    D.    Mr. Hogan's Statements Should Be Suppressed Under Miranda ......................... 13
CONCLUSION ............................................................................................................................. 14

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

**DEFENDANT'S MOTION TO SUPPRESS**
United States v. Hogan, CR 10-0495 EJD-1

- i -

25429\3291347.1

# TABLE OF AUTHORITIES

**FEDERAL CASES**

**Page**

*Miranda v. Arizona,*
  384 U.S. 436 (1966) ................................................................................................... *passim*

*Orozco v. Texas,*
  394 U.S. 324 (1969) ............................................................................................................ 8

*Rhode Island v. Innis,*
  446 U.S. 291 (1980) .......................................................................................................... 14

*Sprosty v. Buchler,*
  79 F.3d 635 (7th Cir. 1996) ................................................................................................ 7

*Stansbury v. California,*
  511 U.S. 318 (1994) ............................................................................................................ 4

*Thompson v. Keohane,*
  516 U.S. 99 (1995) ....................................................................................................... 5, 11

*United States v. Chen,*
  439 F.3d 1037 (9th Cir. 2006) .......................................................................................... 13

*United States v. Craighead,*
  539 F.3d 1073 (9th Cir. 2008) ................................................................................... *passim*

*United States v. Gladney,*
  No. CR- 09-686, 2009 U.S. Dist. LEXIS 7032 (C.D. Cal. Jan. 23, 2009) ...................... 9, 11

*United States v. Griffin,*
  922 F.2d 1343 (8th Cir. 1990) ....................................................................................... 9, 10

*United States v. Hayden,*
  260 F.3d 1062 (9th Cir. 2001) ............................................................................................ 5

*United States v. Kim,*
  292 F.3d 969 (9th Cir. 2002) .................................................................................. 5, 12, 13

*United States v. Lee,*
  699 F.2d 466 (9th Cir. 1982) ................................................................................. 11, 12, 13

*United States v. Mittel-Carey,*
  493 F.3d 36 (1st Cir. 2007) ..................................................................................... 6, 7, 9, 14

*United States v. Perez,*
  No. 11-00082-02, 2012 U.S. Dist. LEXIS 99204 (D. Guam Jul. 17, 2012) ...................... 5

*United States v. Revels,*
  510 F.3d 1269 (10th Cir. 2007) .......................................................................................... 7

*United States v. Salabye,*
  623 F. Supp. 2d 1010 (D. Ariz. 2009) ...................................................................... 5, 7, 11

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

**DEFENDANT'S MOTION TO SUPPRESS**
United States v. Hogan, CR 10-0495 EJD-1

- ii -

25429\3291347.1

*United States v. Williams,*
    435 F.3d 1148 (9th Cir. 2006) ................................................................................... 6, 13, 14

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

**DEFENDANT'S MOTION TO SUPPRESS**
United States v. Hogan, CR 10-0495 EJD-1
- iii -
25429\3291347.1

# NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on October 15, 2012 at 3:00 p.m., or as soon thereafter as the matter may be heard before the Honorable Edward J. Davila, Defendant Shawn Hogan, through counsel, will move, and hereby does move, this Court for an order suppressing all statements made by Mr. Hogan during his custodial interrogation on June 18, 2007. This motion is made on the grounds that Mr. Hogan was interrogated in violation of his Fifth Amendment rights under *Miranda v. Arizona*, 384 U.S. 436 (1966).

This motion is based on this notice, the memorandum of points and authorities in support thereof, any exhibits, pleadings, documents on file in this matter, the concurrently filed declaration of Mr. Hogan, and any additional evidence and argument as may be presented at the hearing on this motion.[1]

Respectfully submitted,

Date: October 1, 2012

*/s/ William P. Keane*
WILLIAM P. KEANE
Attorneys for Defendant Shawn Hogan

---

[1] Should the Court not be willing to grant the motion on the basis of facts set forth in the declaration, undersigned counsel requests that the Court conduct an evidentiary hearing.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

**DEFENDANT'S MOTION TO SUPPRESS**
United States v. Hogan, CR 10-0495 EJD-1

25429\3291347.1

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

At approximately 7:00 a.m. on June 18, 2007 the Federal Bureau of Investigation ("FBI") raided Defendant Shawn Hogan ("Mr. Hogan")'s San Diego residence. Armed FBI agents swarmed Mr. Hogan's apartment that morning with their guns drawn, waking Mr. Hogan and forcing him to the ground. Mr. Hogan was personally searched, told to sit on the couch, and was expressly forbidden from moving about his apartment. FBI agents then began questioning him without administering a *Miranda* warning. Throughout the interview, Mr. Hogan could not move about his apartment, and was even escorted to the bathroom. Therefore, like any reasonable person in his position, he did not feel he was free to end what was an interrogation session that lasted over an hour, let alone leave his apartment. Mr. Hogan was therefore "in custody," and the FBI's failure to inform him of his *Miranda* rights renders any statements made during that interrogation inadmissible. Accordingly, Mr. Hogan requests that the Court suppress any statements made during that interview.

## I.   FACTUAL BACKGROUND[2]

At approximately 7:00 a.m. on Wednesday, June 18, 2007, Mr. Hogan was asleep on his living room couch in his apartment at 8465 Regents Road (No. 448) in San Diego, California. He had fallen asleep there in his shorts and t-shirt the night before. A few minutes later, several FBI agents burst through Mr. Hogan's front door, ostensibly to serve a search warrant. Mr. Hogan did not hear them knocking or otherwise announcing their presence prior to entry. The agents (whom Mr. Hogan now knows were FBI agents) wore what appeared to be bullet-proof vests and immediately ran towards Mr. Hogan with their guns drawn and pointed in his direction. They shouted a series of commands at him, including for him to get up, face the wall, place his hands above his head, to lay on the ground facedown, and to place his hands to the side. Mr. Hogan complied with their orders, and the agents then searched him. (Declaration of Shawn Hogan ("Hogan Decl."), ¶¶ 2-4.)

When the FBI agents finished searching Mr. Hogan, they told him to sit on the couch and

---

[2] All facts are drawn from the concurrently filed Declaration of Shawn Hogan.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

**DEFENDANT'S MOTION TO SUPPRESS**
United States v. Hogan, CR 10-0495 EJD-1                - 2 -                25429\3291347.1

not to move. Mr. Hogan complied, and understood that he was not allowed to move about the apartment. While the other agents searched his apartment, Special Agent Melanie Adams remained with Mr. Hogan. Shortly after, two-to-three additional agents entered the apartment. Mr. Hogan believed at the time that they had been stationed outside to stop him if he tried to escape. (Hogan Decl., ¶ 5.)

After a few minutes, Agent Adams asked Mr. Hogan if he knew why the FBI was there. He said he did not. Agent Adams then handed him a copy of the search warrant, which he read. (Hogan Decl., ¶ 6.) Agent Adams told him that he was not under arrest, and said that she wanted to question him. Mr. Hogan understood "not under arrest" to mean that he would not be taken to jail when they were finished conducting the search. Neither Agent Adams—nor any other agent—ever told Mr. Hogan that he was free to go. Mr. Hogan does not recall hearing them say that he did not have to speak with them. Regardless, Mr. Hogan works from home and felt he had no other place to go that early in the morning. (Hogan Decl., ¶ 7.)

Mr. Hogan continued to sit on the couch in front of Agent Adams as other FBI Agents were searching his apartment and were in the area containing his home office. After a few more minutes, another FBI agent, Agent Todd Walbridge, returned to where Mr. Hogan was sitting and joined Agent Adams. At that point, which Mr. Hogan estimates as being approximately 7:30 a.m., 30 minutes after agents first entered his apartment, Agent Adams began asking him questions. The questions lasted for over an hour. (Hogan Decl., ¶ 8.)

Throughout the questioning, Mr. Hogan did not feel that he was free to leave or to move about his apartment. At one point, he asked if he could enter his home office, which numerous agents were searching. He was told that he could not. Approximately one hour into the agents' questioning, Mr. Hogan asked to use the bathroom, as he felt that he was not free to go without permission. He was allowed to use his bathroom only after Agent Walbridge escorted him there and briefly inspected it before he entered. Mr. Hogan was allowed to close the door, but Agent Walbridge remained just outside the entire time. When he finished, Agent Walbridge escorted him back to the living room and couch, and Agent Adams' questioning resumed. (Hogan Decl., ¶¶ 9-10.)

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

**DEFENDANT'S MOTION TO SUPPRESS**
United States v. Hogan, CR 10-0495 EJD-1

- 3 -

25429\3291347.1

1  Throughout the interview, numerous FBI agents were coming and going through the
2  apartment. They eventually carried away many of the contents from Mr. Hogan's office. At
3  approximately 10:00 a.m., agents requested access to his car, which was parked outside of his
4  apartment. Mr. Hogan gave them the keys, and they then searched his car. (Hogan Decl., ¶¶ 11-
5  12.)
6  During questioning, Mr. Hogan's business computers and servers came up a number of
7  times. He told the agents that the servers were located at an off-site hosting facility, and that he
8  could obtain a copy of one of their hard drives there. The agents then asked him to retrieve the
9  hard drive from the off-site hosting facility. Immediately after the search of his car was complete,
10 the agents directed him to get in his car and drive to the server facility, which is about 25 minutes
11 away by car. The FBI agents followed him to the facility in a separate vehicle. Once there, they
12 directed him to park in the commercial zone or fire lane of a public street, and told an official
13 (whom Mr. Hogan believes was a parking meter officer) that they were there on FBI business.
14 Both agents accompanied Mr. Hogan into the facility, and he pulled the hard drive out from one
15 of his servers and gave it to the agents. It was not until after Mr. Hogan presented the agent with
16 the hard drive that he felt free to leave. At that point, the FBI agents allowed him to return to his
17 apartment unaccompanied. (Hogan Decl., ¶¶ 13-14.)

## ARGUMENT

19 The Court should suppress all statements obtained during the June 18, 2007 interrogation
20 of Mr. Hogan because the government violated Mr. Hogan's Fifth Amendment rights by failing to
21 warn Mr. Hogan of his *Miranda* rights before questioning him.

22  **A.  Legal Standard**

23 Statements obtained during custodial interrogations are inadmissible in court unless the
24 suspect is first read his *Miranda* rights. *See Miranda v. Arizona*, 384 U.S. 436, 467–68 (1966).
25 "Statements elicited in noncompliance with this rule may not be admitted for certain purposes in a
26 criminal trial." *Stansbury v. California*, 511 U.S. 318, 322 (1994).
27 A suspect is "considered 'in custody' for purposes of *Miranda* if the suspect has been
28 'deprived of his freedom of action in any significant way.'" *United States v. Craighead*, 539 F.3d

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

**DEFENDANT'S MOTION TO SUPPRESS**
United States v. Hogan, CR 10-0495 EJD-1

- 4 -

25429\3291347.1

1073, 1082 (9th Cir. 2008) (citing *Miranda*, 384 U.S. at 444). The focus in this inquiry is on the suspect's state of mind: the court should examine the "totality of the circumstances surrounding the interrogation," and "ask whether a reasonable person in those circumstances would 'have felt he or she was not at liberty to terminate the interrogation and leave.'" *Id*. (citing *Thompson v. Keohane*, 516 U.S. 99, 112 (1995)).

Under Ninth Circuit law, five factors are particularly relevant to this inquiry:

> (1) the language used to summon the individual; (2) the extent to which the defendant is confronted with evidence of guilt; (3) the physical surroundings of the interrogation; (4) the duration of the detention; and (5) the degree of pressure applied to detain the individual.

*United States v. Kim*, 292 F.3d 969, 973 (9th Cir. 2002) (citing *United States v. Hayden*, 260 F.3d 1062, 1066 (9th Cir. 2001)).

When, as here, the interrogation occurs in the person's home, the court also may take into account:

> (1) the number of law enforcement personnel and whether they were armed; (2) whether the suspect was at any point restrained, either by physical force or by threats; (3) whether the suspect was isolated from others; and (4) whether the suspect was informed that he was free to leave or terminate the interview, and the context in which any such statements were made.

*Craighead*, 539 F.3d at 1084.

The *Craighead* factors are not "exhaustive." *Id*. "Other factors may also be pertinent to, and even dispositive of, the ultimate determination whether a reasonable person would have believed he could freely walk away from the interrogators." *Kim*, 292 F.3d at 974. Thus, district courts may look to the *Kim* factors and —in the context of in-home interrogations especially—to the *Craighead* factors to inform their analysis of the totality of circumstances. *See, e.g.*, *United States v. Salabye*, 623 F. Supp. 2d 1010, 1013 (D. Ariz. 2009) (applying *Craighead* and *Kim* factors and granting suppression motion); *United States v. Perez*, No. 11-00082-02, 2012 U.S. Dist. LEXIS 99204, at *13-20 (D. Guam Jul. 17, 2012) (applying only *Craighead* factors and granting suppression motion).

Accordingly, when taking into account the totality of the circumstances, "a reasonable

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

**DEFENDANT'S MOTION TO SUPPRESS**
United States v. Hogan, CR 10-0495 EJD-1

- 5 -

25429\3291347.1

person in [the defendant's] position would have felt deprived of his freedom of action in any significant way, such that he would not have felt free to terminate the interrogation," he is "in custody" for purposes of *Miranda*. *Craighead*, 539 F.3d at 1082, 1089. Law enforcement's failure to *Mirandize* a suspect defendant renders any statements made during his interrogation inadmissible. *United States v. Williams*, 435 F.3d 1148, 1152 (9th Cir. 2006) ("[I]f a suspect in custody does not receive an adequate warning effectively apprising him of his rights before he incriminates himself, his statements may not be admitted as evidence against him.").

**B.   Application Of The Ninth Circuit's *Craighead* Factors Show That Mr. Hogan Was 'In Custody' Because A Reasonable Person In His Position Would Not Have Felt Free To Terminate The Interrogation.**

**1.   The Presence Of Nine Armed FBI Agents Led Mr. Hogan To Reasonably Believe He Was In Custody.**

Mr. Hogan reasonably believed he was in custody because armed law enforcement officers overwhelmed his apartment. "[T]he presence of a large number of visibly armed law enforcement officers goes a long way towards making the suspect's home a police-dominated atmosphere." *Craighead*, 539 F.3d at 1085. In *Craighead*, eight armed law enforcement officers, including FBI agents, entered Craighead's home at 8:40 a.m.; some wore protective gear, and unholstered their weapons in Craighead's presence. *Id*. at 1078. Similarly, in *United States v. Mittel-Carey*, 493 F.3d 36, 38 (1st Cir. 2007), eight law enforcement officers (including FBI agents) arrived at Mittel-Carey's house at 6:25 a.m. to execute a search warrant for evidence of possession and transportation of child pornography. Two agents (one carrying a flashlight and unholstered gun) entered Mittel-Carey's darkened bedroom, ordered him to dress and escorted him downstairs.[3] *Id*. at 38. The nine[4] FBI agents (more than in *Craighead* and *Mittel-Carey*) who raided Mr. Hogan's home are more than sufficient to overwhelm the apartment space and

---

[3] Given the factual similarity between the interrogation of Mittel-Carey and Mr. Hogan, it is noteworthy that the Ninth Circuit in *Craighead* found *Mittel-Carey* persuasive and relied on its analysis. *See Craighead*, 539 F.3d at 1084-86 (citing *Mittel-Carey* repeatedly).

[4] Mr. Hogan's account of numerous FBI agents entering his apartment and being present during the search is confirmed by the FBI's Form 302 description of the June 18, 2007 execution of the search warrant, which indicates that nine FBI agents from the FBI were present.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

**DEFENDANT'S MOTION TO SUPPRESS**
United States v. Hogan, CR 10-0495 EJD-1

- 6 -

25429\3291347.1

create a law enforcement-dominated atmosphere. *See United States v. Revels*, 510 F.3d 1269, 1270 (10th Cir. 2007) (finding custodial interrogation where seven officers from two different agencies were present); *Sprosty v. Buchler*, 79 F.3d 635, 638, 642 (7th Cir. 1996) (finding custodial interrogation with five officers, one of whom was visibly armed and in uniform); *Salabye*, 623 F. Supp. 2d at 1013 (finding five uniformed and armed officers remaining in the residence throughout the search and interrogation contributed to a "police-dominated atmosphere").

From the beginning of the raid, Mr. Hogan's home was "dominated" by law enforcement. Mr. Hogan was woken up when multiple FBI agents burst through his front door at approximately 7:00 a.m. Like in *Craighead*, the FBI agents wore what appeared to Mr. Hogan to be bullet-proof vests. Like in *Mittel-Carey*, the FBI agents were armed, and immediately ran toward Mr. Hogan with their guns drawn and, in fact, pointed in his direction. They shouted a series of commands at him, including for him to get up, face the wall, place his hands above his head, to lay on the ground facedown, and to place his hands to the side. As the Ninth Circuit observed, "if the suspect sees the officers unholstering their weapons within his home, the suspect may reasonably believe that his home is no longer safe from the threat of police force." *Craighead*, 539 F.3d at 1085. Indeed, Mr. Hogan not only saw the FBI agents with unholstered weapons, but the FBI agents pointed their weapons in his direction when they approached him. Mr. Hogan complied with their requests and was searched. Given this show of force, Mr. Hogan believed, as would a reasonable person similarly situated, that the "law enforcement agents . . . had come prepared for a confrontation." *Id*. at 1085.

Mr. Hogan's interview took place in his living room, in the central body of the "T" shaped apartment. (Hogan Decl., ¶ 2.) From that vantage point, Mr. Hogan could see both the FBI agents coming and going from the front door of his apartment (at the base of the T) and the hallway that led to his office (at the left fork of the T), where the main search took place. Far from a reprieve from the "sensation of being isolated in a police-dominated environment," the living room required Mr. Hogan to observe the search as it took place. This only enhanced the police-dominated nature of the surroundings: once familiar, but now full of armed men searching

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

**DEFENDANT'S MOTION TO SUPPRESS**
United States v. Hogan, CR 10-0495 EJD-1

- 7 -

25429\3291347.1

Mr. Hogan's possessions and coming and going as they pleased.

"[W]hen the number of law enforcement personnel far outnumber the suspect, the suspect may reasonably believe that, should he attempt to leave, he will be stopped by one of the many officers he will encounter on the way out. The suspect may also believe that the large number of officers was brought for the purpose of preventing his departure." *Craighead*, 539 F.3d at 1084-85. Shortly after the agents burst into the door, Mr. Hogan observed two-to-three additional agents enter the apartment. Mr. Hogan believed that they had been stationed outside to stop him if he tried to escape. (Hogan Decl., ¶ 5.) In total, the nine FBI agents that were in or around Mr. Hogan's apartment during the search and interrogation contributed to Mr. Hogan's reasonable belief that he was would be prevented from leaving or ending his interrogation by an agent either inside or outside of his apartment.

### 2. Mr. Hogan Believed He Was In Custody Because Of The Substantial Restrictions On His Movement.

*Craighead* also directs the Court to look at whether "the suspect was" – like Mr. Hogan – "at any point restrained, either by physical force or by threats." *Craighead*, 539 F.3d at 1085. "When law enforcement agents restrain the ability of the suspect to move . . . a suspect may reasonably feel he is subject to police domination within his own home and thus not free to leave or terminate the interrogation." *Id*. (citing *Orozco v. Texas*, 394 U.S. 324, 325, 327 (1969)). "Restraint amounting to custody may also be inferred where law enforcement officers permit the suspect to move around the house for brief periods but insist on escorting and monitoring him at all times." *Id*. at 1085 (citation omitted).

Here, Mr. Hogan's movement was substantially restricted, even in his own home, and he therefore concluded that he was not free to leave or terminate the interrogation. Mr. Hogan's interaction with law enforcement began when federal agents woke and surrounded Mr. Hogan, shouting and pointing their guns in his direction as they ordered him to the ground. The agents then searched him. This physical force and restraint far exceeds levels sufficient to find custodial interrogation under Supreme Court and Ninth Circuit law. *See, e.g., Orozco*, 394 U.S. at 325, 327 (finding custody where four officers entered the suspect's bedroom and acted as though he was

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

**DEFENDANT'S MOTION TO SUPPRESS**
United States v. Hogan, CR 10-0495 EJD-1

- 8 -

25429\3291347.1

1   "not free to leave," but did not actually handcuff or physically subdue the suspect); *Craighead*,
2   539 F.3d at 1086 (finding the defendant's freedom of action restrained notwithstanding the fact
3   that "Craighead was not handcuffed or physically restrained").

4         Further, even after the physical search of his body, agents continued to restrict Mr.
5   Hogan's movement in his own apartment, forbidding him to enter his home office and requiring
6   constant escort throughout the entire search. *See Mittel-Carey*, 493 F.3d at 40 (finding the "level
7   of physical control" weighed heavily in favor of suppression where the defendant "was ordered to
8   dress, go downstairs, and was told where to sit . . . and he was escorted by agents on the three
9   occasions that he was permitted to move, including while he used the bathroom . . . despite the
10   fact that the control was exercised inside defendant's home") (internal citations omitted). Just as
11   in *Mittel-Carey*, federal agents here ordered Mr. Hogan to sit on his couch, guarded him, and
12   controlled his movement throughout the apartment, denying him access to his office and even
13   closely supervising his visit to the bathroom. Coupled with the early hour of the raid and the long
14   interrogation, these measures further supported Mr. Hogan's conclusion that he was in custody.
15   *See id.* (A "reasonable person, awakened at 6:25 AM by law enforcement officers (one with an
16   unholstered gun), who is interrogated for up to two hours and not permitted freedom of
17   movement within his own home, would believe he was not at liberty to terminate the
18   interrogation and leave.")[5]

19         The government might justify the physical control of Mr. Hogan as necessary to preserve
20   potential evidence within the house, but "this justification does not answer the *very different*
21   *question* of whether a reasonable person" subjected to these restraints "would believe he was not
22   at liberty to terminate the interrogation and leave." *Mittel-Carey*, 493 F.3d at 40 (emphasis
23   added). "[T]hese precautions may be necessary to the success of the lawful search, [but they do]

---

[5] Numerous cases support the common-sense conclusion that because Mr. Hogan was essentially under guard by armed agents, his belief that he was in custody is reasonable. *See, e.g.*, *United States v. Gladney*, No.CR- 09-686, 2009 U.S. Dist. LEXIS 7032, at *17-18 (C.D. Cal. Jan. 23, 2009) (finding it "objectively reasonable for Defendant to believe he was under guard" where at least two FBI agents were guarding him at all times during the questioning). "[T]he likely effect on a suspect of being placed under guard during questioning, or told to remain in the sight of interrogating officials, is to associate these restraints with a formal arrest." *United States v. Griffin*, 922 F.2d 1343, 1350-51 (8th Cir. 1990).

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

**DEFENDANT'S MOTION TO SUPPRESS**
United States v. Hogan, CR 10-0495 EJD-1
- 9 -
25429\3291347.1

1  not lessen their tendency to make a reasonable person believe he is in custody." *Craighead*, 539
2  F.3d at 1086. Whatever the reason, Mr. Hogan's "freedom of action was restrained in a way that
3  increased the likelihood that [he] would succumb to police pressure to incriminate himself." *Id*.
4  at 1086 (citing *Miranda*, 384 U.S. at 467). Accordingly, Mr. Hogan reasonably concluded that he
5  was in custody throughout his interrogation, which lasted over an hour.

### 3. FBI Agents Isolated Mr. Hogan In His Apartment.

Courts should also look at whether, like Mr. Hogan, "the suspect was isolated from others" during the interrogation. *Craighead*, 539 F.3d. at 1086. "A frequently recurring example of police domination concerns the removal of the suspect from the presence of family, friends, or colleagues who might lend moral support during the questioning and deter a suspect from making inculpatory statements...." *Id*. at 1087 (citing *Griffin*, 922 F.2d at 1352). Mr. Hogan lives alone, and was alone in his apartment at that time, and as such there was no one in the apartment from whom to isolate Mr. Hogan. However, when a suspect lives alone, and police take over his home and begin questioning him, the appearance of captivity amplifies the sense of isolation from others in the outside world. "[I]t is not difficult to envision that a suspect's sense of captivity can actually be intensified by the intrusive and intimidating environment created when agents of the law take control of a person's private residence. After all, a person can not reasonably expect to be free anywhere if not within the refuge of his home." *Griffin*, 922 F.2d at 1355 n.15. Mr. Hogan was not free to seek support from others outside his home because he felt he was not free to leave during the interrogation. Thus, this factor supports a finding that Mr. Hogan was in custody during his interrogation.

Mr. Hogan could not take comfort in the "familiar surroundings of the home," as those surroundings were completely transformed by the search taking place before his eyes. As the Ninth Circuit noted in *Craighead*, "[i]f a reasonable person is interrogated inside his own home and is told he is 'free to leave,' where will he go? The library? The police station? He is already in the most constitutionally protected place on earth. To be 'free' to leave is a hollow right if the one place the suspect cannot go is his own home." 539 F.3d at 1083. Notwithstanding any FBI agents' statements to the contrary, a "reasonable person" in Mr. Hogan's "position would not

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

**DEFENDANT'S MOTION TO SUPPRESS**
United States v. Hogan, CR 10-0495 EJD-1

- 10 -

25429\3291347.1

have actually 'felt' he was free to leave." *Craighead*, 539 F.3d at 1089 (citing *Thompson*, 516 U.S. at 112). Thus, this factor strongly weighs in favor of finding that Mr. Hogan's interrogation was custodial.

### 4. Mr. Hogan Was Not Adequately Informed Of His Right To Terminate The Interview.

While Courts should look at the voluntary nature of the questioning, "[t]he mere recitation of the statement that the suspect is free to leave or terminate the interview . . . does not render an interrogation non-custodial *per se*. We must consider . . . the context of the scene as a whole." *Craighead*, 539 F.3d at 1088. Even in circumstances where an agent has told a suspect that he is free to leave, courts have found the interview to be custodial where, as here, other indicia of custody are present. *See, e.g., Salabye*, 623 F. Supp. 2d at 1014 (finding interrogation of suspect in law enforcement vehicle while agents searched his home custodial notwithstanding fact that agent twice told suspect he was free to leave); *Gladney*, 2009 U.S. Dist. Lexis 7032, at *18-19 (finding reasonable person in defendant's position would not have "actually 'felt' he was free to leave" and noting that the fact that he was told by agents that he was not going to be arrested and was free to leave "only begs the question as to where he was suppose[d] to go [since i]t was clear that the apartment was teeming with law enforcement personnel").

Mr. Hogan recalls hearing only that he was not under arrest. He reasonably understood "not under arrest" to mean that he would not be taken to jail when they were finished conducting the search. Neither Agent Adams—nor any other agent—ever told him that he was free to go. He does not recall hearing them say that he did not have to speak with them. Mr. Hogan did not voluntarily invite the FBI agents to enter his home on that morning, and did not ask to speak to agents Adams and Walbridge while the other agents searched his home. Rather, Mr. Hogan's interrogation was effectively mandatory: he was detained in one room of his home and had nowhere else to go, even his own bathroom. Any boilerplate statements to the effect that Mr. Hogan was not under arrest, was not being detained, or was not obligated to participate in the interrogation have virtually no resonance. *See United States v. Lee*, 699 F.2d 466, 467 (9th Cir. 1982) (court suppressed interrogation of suspect in FBI vehicle parked in front of suspects home

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

**DEFENDANT'S MOTION TO SUPPRESS**
United States v. Hogan, CR 10-0495 EJD-1

- 11 -

25429\3291347.1

1 during search of home, because the suspect could not leave the interrogation site and retreat to the
2 safety of his home, which was the locus of police activity.); *quoted in Craighead*, 539 F.3d at
3 1088 (noting that in *Lee* it was "[p]articularly relevant [that] 'police investigators were in and
4 around [Lee's] house" during the interview). Mr. Hogan had no place to go, even within his
5 apartment, so was not actually free to terminate the interview in any practical sense. The warning
6 was insufficient.

### C. Additional Factors Indicate That Mr. Hogan Was In Custody Under The Totality Of The Circumstances.

#### 1. Mr. Hogan's Contact With Law Enforcement Was Involuntary

Unlike those who initiate contact with law enforcement (and therefore expect that they can end an encounter), Mr. Hogan had no choice about whether he would be confronted by the FBI. *Kim*, 292 F.3d at 974-75 (directing courts to examine the manner in which the contact was initiated). The explicit language used to summon Mr. Hogan consisted of commands and orders: get up, face the wall, place your hands above your head, lay on the ground facedown, and place your hands to the side. Federal agents backed up these orders with drawn handguns. The actual language used (and the body language of being forced to the ground at gunpoint and searched) indicate that Mr. Hogan did not voluntarily initiate contact with the FBI on June 18, 2007.

#### 2. Law Enforcement Confronted Mr. Hogan With Alleged Evidence Against Him.

Courts are also more likely to find a defendant was in custody where he is "confronted with evidence of guilt." *Id*. at 974. In *Kim*, the police had warned the defendant she might be breaking the law and their questions to the defendant "covered in detail" her alleged criminal activities. *Id*. at 977. The questions "could only have reinforced [the] impression" that she was a "criminal suspect." *Id.* Accordingly, the Ninth Circuit held that the overall manner of questioning supported the conclusion that the defendant was in custody. *Id.* Here, Agent Adams presented Mr. Hogan with a copy of the search warrant and its attachments, which described the items to be seized. This list described, amongst other things, computer files, logs, programs, scripts or source code that refer to eBay or that refer to or contain tools created, used or

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

**DEFENDANT'S MOTION TO SUPPRESS**
United States v. Hogan, CR 10-0495 EJD-1

- 12 -

25429\3291347.1

1  distributed by Mr. Hogan that contain 1x1 pixels or that cause forced clicks, cloaking re-directs,
2  cookie-stuffing, or cookie-tracking. Agent Adams then followed up by asking questions about
3  the items described in the search warrant. Mr. Hogan reasonably concluded that the FBI agents
4  were attempting to elicit incriminating statements from him, further supporting his reasonable
5  conclusion that he was in custody. *See Lee*, 699 F.2d at 468 (affirming suppression of confession
6  where reasonable innocent person could conclude that he was not free to leave because of
7  confrontation with evidence of guilt).

### 3. The Length Of The Interrogation, Which Was More Than One Hour, Indicates That Mr. Hogan Was In Custody.

10  Finally, the length of Mr. Hogan's interview and detention, including a trip to Mr.
11 Hogan's off-site server host, further supports a finding that he was in custody. *Kim*, 292 F.3d at
12 977. In *Kim*, where the defendant was detained for "some time" and then questioned for
13 approximately one hour, the Ninth Circuit found that it was a "full-fledged interrogation, not a
14 brief inquiry," supporting the conclusion that she was in custody. *Id.* Here, Mr. Hogan was
15 detained and then interrogated for more than one hour. Far from a "brief inquiry" incidental to
16 the search of his home, the length of the interrogation, especially in the context of the totality of
17 the circumstances, indicates that Mr. Hogan's interview was a "full-fledged interrogation" and
18 should be suppressed.

### D. Mr. Hogan's Statements Should Be Suppressed Under *Miranda*.

20 *Miranda* "prohibits 'custodial interrogation' unless the government first provides the
21 suspect with certain warnings." *United States v. Chen*, 439 F.3d 1037, 1040 (9th Cir. 2006). "[I]f
22 a suspect in custody does not receive an adequate warning effectively apprising him of his rights
23 before he incriminates himself, his statements may not be admitted as evidence against him."
24 *Williams*, 435 F.3d at 1152.

25 As set forth above, Mr. Hogan was in custody during the time he was questioned in his
26 apartment by Agents Adams and Walbridge on the morning of June 18, 2007. Mr. Hogan was
27 not informed at any time that he had a right to remain silent or that he had a right to an attorney.
28 The FBI's questioning rose to a level sufficient to trigger *Miranda* rights. Interrogation under

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

**DEFENDANT'S MOTION TO SUPPRESS**
United States v. Hogan, CR 10-0495 EJD-1

- 13 -

25429\3291347.1

1  *Miranda* includes "any words or actions on the part of the police . . . that the police should know
2  are reasonably likely to elicit an incriminating response." *Rhode Island v. Innis*, 446 U.S. 291,
3  301 (1980). This inquiry focuses on "the defendant's perception." *United States v.*
4  *Moreno-Flores*, 33 F.3d 1164, 1169 (9th Cir. 1994). Mr. Hogan was subjected to over an hour of
5  coercive questioning in a police-dominated environment designed to elicit incriminating
6  statements about the subject matter of the search warrant. Agents Adams and Walbridge "could
7  have chosen to postpone the interrogation until a non-custodial moment, or to *Mirandize* [Mr.
8  Hogan]. Either step would have protected both the defendant's constitutional rights and the
9  officers' legitimate law enforcement needs." *Craighead*, 539 F.3d at 1086 (quoting *Mittel-Carey*,
10 493 F.3d at 40). They did neither.

11 As the government did not administer *Miranda* warnings before or during its custodial
12 interrogations of Mr. Hogan, all statements that he made in the course of the June 18, 2007
13 custodial interrogation must be suppressed. *Williams*, 435 F.3d at 1152.

## CONCLUSION

15 For the foregoing reasons, Mr. Hogan respectfully requests that the Court suppress all
16 statements obtained during the June 18, 2007 FBI interview of Mr. Hogan in their entirety.

17                                     Respectfully submitted,

19 Date: October 1, 2012           */s/ William P. Keane*
                                    WILLIAM P. KEANE
20                                  Attorneys for Defendant Shawn Hogan

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

**DEFENDANT'S MOTION TO SUPPRESS**
United States v. Hogan, CR 10-0495 EJD-1
- 14 -
25429\3291347.1