William P. Keane, Esq. (State Bar No. 124756)
wkeane@fbm.com
Jessica K. Nall (State Bar No. 215149)
jnall@fbm.com
Christoffer Lee, Esq. (State Bar No. 280360)
clee@fbm.com
Farella Braun & Martel LLP
Russ Building
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
Telephone: (415) 954-4400
Facsimile: (415) 954-4480

Attorneys for Defendant
SHAWN HOGAN

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SHAWN HOGAN,<br><br>Defendant. | Case No. CR 10-0495 EJD-1<br><br>**DECLARATION OF SHAWN HOGAN IN SUPPORT OF DEFENDANT'S MOTION TO SUPPRESS**<br><br>Date: October 15, 2012<br>Time: 3:00 p.m.<br>Court: Hon. Edward J. Davila<br>Courtroom 4, 5th Floor<br>San Jose Courthouse<br>280 South 1st Street<br>San Jose, CA 95113<br><br>Jury Trial Set for January 15, 2013 |

I, SHAWN HOGAN, DECLARE AND STATE AS FOLLOWS:

1) I am the defendant in the above-captioned matter. All of the statements contained herein are made and based on my personal knowledge and, if called as a witness, I could and would testify competently thereto.

2) On June 18, 2007 at approximately 7:00 a.m., I was asleep in my apartment at 8465 Regents Road, Apartment No. 448 in San Diego, California. That apartment is shaped roughly like a "T." At the top of the T is the front door, which is the only entrance/exit to the

Farella Braun & Martel LLP
Russ Building, 30th Floor
235 Montgomery Street
San Francisco, CA 94104
Telephone: (415) 954-4400

HOGAN DECL. I/S/O/ DEFENDANT'S MOTION TO SUPPRESS
*United States v. Hogan*, CR 10-0495 EJD-1

1

25429\3260590.1

1  apartment. The bottom of the T contains the living room, where there is a couch. At one end of
2  the top of the T there is a master bedroom, bathroom, and kitchen areas, and on the other side of
3  the T there is a guest bedroom and my home office.

4  3) That morning, I was wearing shorts and a t-shirt, sleeping on the living room
5  couch where I had fallen asleep the night before. I lived alone and I was alone in my apartment at
6  the time. I can see the front door from the couch.

7  4) At around 7:00 a.m., I was woken up and startled when several armed agents burst
8  through my front door. At no time before entry did I hear them knock or announce their
9  presence. The agents (whom I now know are FBI agents) wore what appeared to be bullet-proof
10 vests and immediately ran towards me with their guns drawn and pointed in my direction. They
11 shouted a series of commands at me, including for me to get up, face the wall, place my hands
12 above my head, to lay on the ground facedown, and to place my hands to the side. I complied
13 with their orders, and the agents then searched me.

14 5) When the FBI agents finished searching me, they told me to sit on the couch and
15 not to move. I complied, and understood that I was not allowed to move about the apartment.
16 While the other agents searched my apartment, an FBI agent (whom I later learned was Special
17 Agent Melanie Adams) remained with me. Shortly after, two-to-three additional agents entered
18 the apartment. I believed at the time that they had been stationed outside to stop me if I tried to
19 escape.

20 6) After a few minutes, Agent Adams asked me if I knew why the FBI was there. I
21 said I did not. Agent Adams then handed me a copy of the search warrant, which I read.

22 7) Agent Adams told me that I was not under arrest, and said that she wanted to
23 question me. I understood "not under arrest" to mean that I would not be taken to jail when they
24 were finished conducting the search. Neither Agent Adams—nor any other agent—ever told me
25 that I was free to go. I don't recall hearing them say that I did not have to speak with them.
26 Regardless, I work from home and felt I had no other place to go that early in the morning.
27 ///
28 ///

Farella Braun & Martel LLP
Russ Building, 30th Floor
235 Montgomery Street
San Francisco, CA 94104
Telephone: (415) 954-4400

HOGAN DECL. I/S/O/ DEFENDANT'S MOTION TO SUPPRESS
United States v. Hogan, CR 10-0495 EJD-1

2

25429\3260590.1

8) As I sat on the couch in front of Agent Adams, other FBI Agents were searching my apartment and were in the area containing my home office. After a few more minutes, another FBI agent (whom I later learned was Agent Todd Walbridge) returned to where I was sitting and joined Agent Adams. At that point, which I estimate as being approximately 7:30 a.m., 30 minutes after agents first entered my apartment, Agent Adams began asking me questions. The questions lasted for over an hour.

9) While the agents questioned me, I did not feel that I was free to leave or to move about my apartment. At one point, I asked if I could enter my home office, which numerous agents were searching. I was told that I could not.

10) Approximately one hour into the agents' questioning, I asked to use the bathroom, as I felt that I was not free to go without permission. I was allowed to use my bathroom only after Agent Walbridge escorted me there and briefly inspected it before I entered. I was allowed to close the door, but Agent Walbridge remained just outside the entire time. When I finished, he escorted me back to the living room and couch, and Agent Adams' questioning resumed.

11) Throughout the interview, numerous FBI agents were coming and going through the apartment. They eventually carried away many of the contents from my office.

12) At approximately 10:00 a.m., agents requested access to my car, which was parked outside of my apartment. I gave them the keys, and they then searched my car.

13) During questioning, my business computers and servers came up a number of times. I told the agents that the servers were located at an off-site hosting facility, and that I could obtain a copy of one of their hard drives there.

14) The agents then asked me to retrieve the hard drive from the off-site hosting facility. Immediately after the search of my car was complete, the agents directed me to get in my car and drive to the server facility, which is about 25 minutes away by car. The FBI agents followed me to the facility in a separate vehicle. Once there, they directed me to park in the commercial zone or fire lane of a public street, and told an official (whom I believe was a parking meter officer) that we were there on FBI business. Both agents accompanied me into the facility,

///

Farella Braun & Martel LLP
Russ Building, 30th Floor
235 Montgomery Street
San Francisco, CA 94104
Telephone: (415) 954-4400

HOGAN DECL. I/S/O/ DEFENDANT'S MOTION TO SUPPRESS
United States v. Hogan, CR 10-0495 EJD-1

3

25429\3260590.1

and I pulled the hard drive out from one of my servers and gave it to the agents. It was not until after I presented the agent with the hard drive that I felt free to leave. At that point, the FBI agents allowed me to return to my apartment unaccompanied.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed this 6th day of September 2012, at San Diego , California.

*[signature]*
Shawn Hogan

Farella Braun & Martel LLP
Russ Building, 30th Floor
235 Montgomery Street
San Francisco, CA 94104
Telephone: (415) 954-4400

HOGAN DECL. I/S/O/ DEFENDANT'S MOTION TO SUPPRESS
United States v. Hogan, CR 10-0495 EJD-1

4

25429\3260590.1