1  William P. Keane, Esq. (State Bar No. 124756)
   wkeane@fbm.com
2  Jessica K. Nall, Esq. (State Bar No. 215149)
   jnall@fbm.com
3  Christoffer Lee, Esq. (State Bar No. 280360)
   clee@fbm.com
4  FARELLA BRAUN + MARTEL LLP
   235 Montgomery Street, 17th Floor
5  San Francisco, CA  94104
   Telephone:  (415) 954-4400
6  Facsimile:  (415) 954-4480

7  Attorneys for Defendant
   SHAWN HOGAN
8

9              UNITED STATES DISTRICT COURT

10           NORTHERN DISTRICT OF CALIFORNIA

11                  SAN JOSE DIVISION

12

13  UNITED STATES OF AMERICA,          | No. CR 10-0495 EJD-1

14                 Plaintiff,          | **DEFENDANT'S REPLY IN SUPPORT OF MOTION TO SUPPRESS EVIDENCE**

15         vs.                         | Date:   October 30, 2012
                                       | Time:   10:00 a.m.
16  SHAWN HOGAN,                       | Court:  Hon. Edward J. Davila
                                       |         Courtroom 4, 5th Floor
17                 Defendant.          |         San Jose Courthouse
                                       |         280 South 1st Street
18                                     |         San Jose, CA 95113

19                                     | Jury Trial Set for January 15, 2013

20

21

22

23

24

25

26

27

28

**DEFENDANT'S REPLY I/S/O/ MOTION TO SUPPRESS**
United States v. Hogan, CR 10-0495 EJD-1

25429\3320985.1

1   I.      **INTRODUCTION**

2           On the early morning that nine armed federal agents searched Shawn Hogan's home,

3   waking him with guns drawn, ordering him to the ground and then to remain seated on the couch,

4   allowing him to use the bathroom only with an armed escort, and depriving him of his

5   smartphone—his only practical means of access to friends and family—a reasonable person in his

6   position would not have felt free to end his interrogation and leave.  The government in its

7   Opposition attempts to bolster its failure to give Mr. Hogan a *Miranda* warning by directing the

8   Court's attention to Mr. Hogan's alleged conduct in the days, weeks, and even years following his

9   June 18, 2007 custodial interrogation.  This alleged post-interrogation conduct is not relevant to

10  the narrow analysis required by binding Ninth Circuit precedent and does not change the

11  conclusion that a reasonable person in Mr. Hogan's position would have believed he was in

12  custody.

13          Leaving such irrelevant material aside, application of the factors from *United States v.*

14  *Craighead*, 539 F.3d 1073, 1082 (9th Cir. 2008) to the circumstances of the in-home interrogation

15  here shows that it was in fact custodial and thus that all statements obtained were in violation of

16  Mr. Hogan's *Miranda* rights.  During Mr. Hogan's interrogation, his movement was restricted—

17  at all times he was guarded by an FBI agent—including when he was escorted to the bathroom.

18  Consistent with this level of supervision, despite the government's claims now to the contrary,

19  Mr. Hogan was not adequately informed that he was free to either move about the apartment or

20  leave.  In any event, any purported statement about his freedom to decline to participate in the

21  interrogation must be examined in the context in which it would have been delivered:  objective

22  evidence here strongly suggests that Mr. Hogan would not have been allowed to leave the

23  apartment given concerns about his ability to remotely delete electronic evidence resident on his

24  computers.  Finally, the government's after-the-fact attempt to depict the interrogation as a

25  friendly conversation is irrelevant to the objective inquiry of whether a reasonable person would

26  have felt free to terminate the questioning and leave the scene. Because Mr. Hogan was not given

27  the *Miranda* warnings to which he was entitled, statements elicited during the custodial

28  interrogation must be suppressed.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

DEFENDANT'S REPLY I/S/O/ MOTION TO
SUPPRESS
United States v. Hogan, CR 10-0495 EJD-1

25429\3320985.1

1    II.    **ARGUMENT**

2        A.    **The Government Relies on Alleged Post-Interrogation Conduct That Is
              Irrelevant to Determining Whether the June 18, 2007 Interrogation Was
3             Custodial.**

4            An interrogation is custodial where, under the totality of the circumstances, "a reasonable

5    person in [Mr. Hogan's] position would have felt deprived of his freedom of action in any

6    significant way, such that he would not have felt free to terminate the interrogation." *Craighead*,

7    539 F.3d at 1082.[1]  This analysis necessarily focuses on the circumstances immediately leading

8    up to and during the interrogation; it is logically and temporally limited to what a reasonable

9    person would have believed at the time. *Id.* (citing *Thompson v. Keohane*, 516 U.S. 99, 112

10   (1995) (the court must "first examine the totality of the circumstances *surrounding the*

11   *interrogation*" and "then ask whether a reasonable person *in those circumstances* would 'have felt

12   he or she was not at liberty to terminate the interrogation and leave'") (emphasis added).

13           In an evident effort to rehabilitate its failure to provide an appropriate *Miranda* warning,

14   the government attempts to reason backward and funnel years of irrelevant post-interrogation

15   conduct into what is properly a narrow and temporally limited question.  This effort is misguided.

16   None of Mr. Hogan's alleged post-interrogation behavior proves anything about whether he was

17   or was not in custody for some period of time on that day in June.  For example, the government

18   argues that in subsequent days and weeks following the interrogation, Mr. Hogan had follow-up

19   communications with the FBI and twice met with an agent to have his property returned to him.

20   (Opposition to Mot. to Suppress ("Opp. Br.") at 4-6, 15-16.)  Meeting with an agent to get one's

21   seized property back, however, is hardly evidence that an interview that occurred weeks before

22   was or was not custodial in nature.  Likewise, an individual's subsequent contact and cooperation

23   with law enforcement does nothing to answer the question of whether a reasonable person would

24   have felt free to terminate an interrogation on a given day.[2]  By the same token, the government's

---

25   [1] The government's citation to *Howes v. Fields*, 132 S. Ct. 1181 (2012) is inapposite.  In *Howes*,
26   the Court focused on a very different set of issues, namely whether interrogations of prisoners
     (who are used to standard conditions of confinement and associated restrictions on freedom)
27   implicate the same interests the Court sought to protect in affording special safeguards to persons
     subject to custodial interrogation in the outside world.  132 S. Ct. at 1189-91.

28   [2] Hypothetically, if an individual did not feel that he or she had a choice but to answer questions

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

**DEFENDANT'S REPLY I/S/O/ MOTION TO
SUPPRESS**
United States v. Hogan, CR 10-0495 EJD-1

- 2 -

25429\3320985.1

1   speculation that Mr. Hogan did not "even bother to hire a lawyer to represent him in the case until

2   almost two years after" the custodial interrogation is beside the point.  (Opp. Br. at 15.)  In fact,

3   the government has no idea when Mr. Hogan first consulted legal counsel, which regardless has

4   nothing to do with the circumstances of the June 18, 2007 interrogation.[3]

5       None of Mr. Hogan's alleged conduct after the limited custodial period on June 18, 2007

6   is probative to the temporally distinct question of whether a reasonable person would have felt

7   free to leave the apartment from the moment numerous armed FBI agents burst through his door

8   and ordered him to the ground, while he was kept under guard and deprived of his smartphone as

9   agents searched his home, and during the time he was peppered with direct questions about

10  alleged criminal activity.[4]  As detailed below, the relevant facts—many of which the government

11  concedes in its Opposition—establish instead that Mr. Hogan was subjected to a custodial

12  interrogation.  His statements during that custodial period must thus be suppressed.[5]

### B. Application of the Binding *Craighead* Factors Establishes That Mr. Hogan Was in Custody and Statements Obtained in Violation of His *Miranda* Rights Must Thus Be Suppressed.

15      The significance of the in-home context of the interrogation here cannot be overstated.  As

---

17  in a custodial interrogation, it is reasonable that a defendant might feel that subsequent
cooperation was his or her only option given previous statements made.

[3] The government has not established that Mr. Hogan authored or posted an August 2, 2010
internet blog entry, which appears on its face to have been dated more than three years after the
interrogation at issue and is of no relevance.  (Opp. Br. at 5-6, 15.)  Mr. Hogan objects to its
introduction here under, among other grounds, Federal Rule of Evidence 901.

[4] The government attempts to argue that Mr. Hogan's participation in the interrogation was
voluntary as evidenced by his *post-interrogation* consent to search his vehicle and consent to give
the agents a hard drive from his off-site servers.  Not only is this post-interrogation activity
irrelevant to the determination of whether Mr. Hogan was in custody at the time of the earlier
interrogation, but under governing law, voluntary action itself does not answer the question of
whether the defendant was entitled to *Miranda* rights.  "Failure to administer *Miranda* warnings
creates a presumption of compulsion. . . .  [P]atently *voluntary* statements taken in violation of
*Miranda* must be excluded from the prosecution's case."  *Oregon v. Elstad,* 470 U.S. 298, 307
(1985) (emphasis in original).  In any event, a reasonable small-business owner who operates a
business off-site might rationally give consent to allow the government to have a hard drive
versus running the risk that the FBI would go in hastily, and unfamiliar with the equipment,
disrupt the servers and business.

[5] Any statements Mr. Hogan made to government after the in-home interrogation concluded are
not the subject of this Motion to Suppress.

**DEFENDANT'S REPLY I/S/O/ MOTION TO SUPPRESS**
United States v. Hogan, CR 10-0495 EJD-1

- 3 -

25429\3320985.1

1    the Ninth Circuit noted, "[t]he usual inquiry into whether the suspect reasonably believed he

2    could 'leave' the interrogation does not quite capture the uniqueness of an interrogation

3    conducted within the suspect's home." *Craighead*, 539 F.3d at 1082.  Under *Craighead*, to be

4    considered a custodial interrogation necessitating a *Miranda* warning, an in-home interrogation

5    like the one at issue here must satisfy the four factors keyed to this particular inquiry:

6              (1) the number of law enforcement personnel and whether they
               were armed; (2) whether the suspect was at any point restrained,
7              either by physical force or by threats; (3) whether the suspect was
               isolated from others; and (4) whether the suspect was informed that
8              he was free to leave or terminate the interview, and the context in
               which any such statements were made.
9

10   *Craighead*, 539 F.3d at 1084.  In an apparent effort to apply less-stringent requirements to the

11   present question, the government cites to a litany of custodial interrogation factors, many of

12   which are inapposite to the unique context of in-home interrogations—the specific issue for

13   which the Ninth Circuit developed the multi-part test in *Craighead*.  The government's

14   suggestion that the *Craighead* factors should not apply merely because Mr. Hogan maintained a

15   home office in his apartment is especially unavailing.  There is no legitimate dispute that Mr.

16   Hogan's interview occurred in his home, where he was awoken from a sound sleep on his living

17   room couch in the early morning hours, and was interviewed in his shorts and t-shirt.  (Opp. Br. at

18   8 n. 4.)[6]

19         Application of the *Craighead* factors establishes that Mr. Hogan was subjected to an in-

20   home custodial interrogation:

21         (1) Numerous armed federal agents entered Mr. Hogan's home at around 7:00 a.m.,

22   waking him while he slept on his couch, running toward him with guns pointed in his direction,

23   ordering him to the ground, searching him, depriving him of his smartphone, and directing him to

24

25   [6] The government also unconvincingly attempts to distinguish *United States v. Mittel-Carey*, 493
     F.3d 36, 38 (1st Cir. 2007)—a closely analogous in-home custodial interrogation case.  (Opp. Br.
26   at 14 n. 9.)   The government glosses over the key factors that make *Mittel-Carey* instructive:  a
     police show of force; being awoken at gunpoint; ordered to go somewhere in the house and
27   remain there; and a police escort when using the restroom.  These are the same factors that
     transformed both Mr. Mittel-Carey's and Mr. Hogan's homes into a "police-dominated
28   atmosphere."  *Craighead*, 539 F.3d at 1085.

**DEFENDANT'S REPLY I/S/O/ MOTION TO
SUPPRESS**                                                  - 4 -
United States v. Hogan, CR 10-0495 EJD-1                                          25429\3320985.1

1    remain at the couch where he would later be joined by Agents Adams and Walbridge for

2    questioning.  The government does not dispute these facts,[7] and evidence it submitted confirms

3    Mr. Hogan's description of the events.  (Dkt. No. 65, Hogan Decl., ¶¶ 2-5; Dkt. No. 68-3 at 2-

4    3/USA 500-01.)

5           (2) Mr. Hogan's freedom of movement was restrained significantly during the search and

6    subsequent interrogation.  Though the government asserts in its Opposition that the agents told

7    Mr. Hogan that he was free to "go to another area of the apartment (as long as he did not interfere

8    with the execution of the search warrant)" (Opp. Br. at 13), such a statement is without factual

9    support – it appears nowhere in Agent Adams' declaration or in the evidence submitted by the

10   government.  In fact, Mr. Hogan's declaration makes clear that he was forced to the ground when

11   he was initially searched and then directed to sit on the couch and remain there.  In direct

12   opposition to the government's assertion that Mr. Hogan was free to roam about his apartment,

13   the only time Mr. Hogan was allowed to move about in the apartment was when Agent Walbridge

14   escorted him to and from the restroom.  (Hogan Decl., ¶¶ 9-10.)  Though Mr. Hogan asked

15   whether he could enter his home office, he was told he could not.  *Id.*  These are striking indicia

16   that Mr. Hogan had substantial restrictions placed on his movement.

17          (3) Mr. Hogan, who lived alone, was deprived of his Blackberry smartphone for the

18   duration of the search, which continued far longer than the interrogation itself.  (*See* FBI 302,

19   Dkt. No. 68-3 at 2-3/USA 500-01 (indicating search began at 7:03 a.m. and that agents did not

20   depart until 10:00 a.m.); *see also* Declaration of Christoffer Lee in Support of Defendant's

21   Motion to Suppress Evidence ("Lee Decl."), Ex. A/USA 9029-30 (showing FBI photographs of

22   Mr. Hogan's smartphone.))  Without the practical means to call, text, or e-mail any friends or

23   family (the land-lines in the apartment were in areas to which Mr. Hogan was denied access), Mr.

24

25   _____

[7] The government acknowledges that a total of nine agents entered the apartment during the
26   search, though it notes that two agents left after an hour and twenty minutes, and one agent came
     to drop off supplies.  The government does not dispute that numerous agents participated in the
27   initial entry and charged toward Mr. Hogan with their guns drawn, though the government
     unconvincingly tries to de-emphasize this point.  (*See* Opp. Br. at 12:8-10 "A total of nine agents
28   did enter the apartment . . . but only some of them came in for the initial entry.")

**DEFENDANT'S REPLY I/S/O/ MOTION TO
SUPPRESS**
United States v. Hogan, CR 10-0495 EJD-1

- 5 -

25429\3320985.1

1    Hogan was effectively isolated from any available support.

2              (4) Lastly, Mr. Hogan was not adequately informed that he could terminate the interview

3    at any time or leave the apartment, especially given the context surrounding any such statements.

4    Mr. Hogan specifically recalls that neither Agent Adams—nor any other agent—ever told him

5    that he was free to go. [8]  (Hogan Decl., ¶ 7.)  Even if Agent Adams allegedly advised Mr. Hogan

6    that he was "not under arrest" or "being detained in any way" and was "not obligated to

7    participate," as the Ninth Circuit observed, "[t]he mere recitation of the statement that the suspect

8    is free to leave or terminate the interview, however, does not render an interrogation non-

9    custodial *per se*.  [The Court] must consider the delivery of these statements within the context of

10   the scene as a whole." *Craighead*, 539 F.3d at 1088 (citing *United States v. Lee*, 699 F.2d 466,

11   467–68 (9th Cir. 1982) (per curiam).  Notwithstanding such rote admonitions and FBI 302

12   boilerplate, the agents' questions to Mr. Hogan, under armed guard, related directly to the subject

13   matter of the search warrant and were exactly the type of questions "the police should know are

14   reasonably likely to elicit an incriminating response," *Rhode Island v. Innis*, 446 U.S. 291, 301

15   (1980).

16             Indeed, the context of the interrogation as a whole cuts strongly against the government's

17   notion that if Mr. Hogan "had wanted, he could have left and gone to a family or friend's

18   apartment, or to a coffee shop; he could have visited the apartment common area; or he could

19   have moved to his patio or a different room in the apartment that was not then being searched."

20

21   [8] The government asks the Court to discount Defendant's sworn declaration, in part, because it
22   was written five years after the events in question.  They ask the Court to instead credit the
     testimony of Agent Adams, notwithstanding that it also was written five years later, because the
23   "agents involved in the search and interview prepared reports the day after the events happened—
     when everything was fresh in their mind."  (Opp. Br. at 6 n. 3.)  Yet details appear in Agent
24   Adams declaration that are absent from her FBI 302 Memorandum of Interview—details about
     the seating of the parties during the interrogation, her characterization of Mr. Hogan's "friendly"
25   demeanor, her lack of recollection of how long the interview actually lasted, etc.  (*Compare*
     Adams Decl., ¶¶ 3-6 *with* FBI 302, Dkt. No. 68-3 at 2-3, 13/USA 500-01, USA502.)  Unlike
26   Agent Adams, who has "participated in numerous search warrants and interviews" over her
     eleven-year career in the FBI (Adams Decl., ¶ 1), Mr. Hogan has lived through—and will long
27   remember in detail—one residential search and FBI interrogation.

28

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

**DEFENDANT'S REPLY I/S/O/ MOTION TO
SUPPRESS**
United States v. Hogan, CR 10-0495 EJD-1

- 6 -

25429\3320985.1

1    (Opp. Br. at 13.)  According to the Affidavit In Support of the Search Warrant, signed by Special

2    Agent Todd Walbridge, eBay employee Christine Kim had advised the agents that Mr. Hogan

3    "worked from home and most likely remotely accessed his servers from that location.  She

4    believed that he had the technical skills to install a quick erase or exit button or reformat of his

5    servers if he believed it was needed for immediate response.  She thought he might even be able

6    to do this from his Blackberry phone."  (Dkt. No. 68-2, Declaration of Matthew Lamberti, Ex. 1

7    at 34, ¶ 27.)  It seems unlikely that if agents believed an individual had the capability to remotely

8    erase his servers, those same agents would have allowed him to wander off to the local coffee

9    shop with wifi or the local internet café where he could presumably log on and remotely delete

10   evidence from his home/work computers or servers.  Moreover, this begs the question how an

11   individual is supposed to seek the comfort of friends or family at 7:00 a.m. when agents had

12   custody of his smartphone during the interrogation and search.  (Lee Decl., Ex. A, USA 9029-30.)

13   Notwithstanding the alleged boilerplate recitation that Mr. Hogan was free to leave, the context

14   surrounding such alleged statements suggests otherwise.  *Craighead*, 539 F.3d at 1088.[9]

15         In a final attempt to establish that the in-home interrogation of Mr. Hogan was non-

16   custodial, the government attempts to recast the interrogation as a free flowing "conversation

17   [that] was friendly and relaxed," in the comfort of Mr. Hogan's home.  (Opp. Br. at 11; Adams

18   Decl., at ¶ 5.)  But Agent Adams' speculation and characterization of Mr. Hogan's demeanor and

19   how the conversation "felt" to her is irrelevant.  The "inquiry focuses on the objective

20   circumstances of the interrogation, not the subjective views of the officers or the individual being

21   questioned."  *United States v. Kim*, 292 F.3d 969, 973 (9th Cir. 2002).  The test is thus not a

22   subjective inquiry about whether Hogan was particularly vulnerable, stoic, or affable.  Merely

23

24   _____

     [9] The government points to the fact that agents are free to impose minimal restrictions on
25   individuals to ensure agent safety, to maintain the integrity of evidence, and maintain the status
     quo.  (Opp. Br. at 13.)  But just as the Eighth and Ninth Circuits recognize, this evidence
26   preservation and officer protection "justification does not answer the *very different question* of
     whether a reasonable person" subjected to these restraints "would believe he was not at liberty to
27   terminate the interrogation and leave."  *Mittel-Carey*, 493 F.3d at 40 (emphasis added).  "[T]hese
     precautions may be necessary to the success of the lawful search, [but they do] not lessen their
28   tendency to make a reasonable person believe he is in custody."  *Craighead*, 539 F.3d at 1086.

**DEFENDANT'S REPLY I/S/O/ MOTION TO
SUPPRESS**
United States v. Hogan, CR 10-0495 EJD-1

- 7 -

25429\3320985.1

1    because Mr. Hogan was able to muster politeness and pleasantness during an uncomfortable

2    interrogation does not obviate his right to have received *Miranda* warnings before it began.

3          Courts considering whether an in-home interview rises to the level of a custodial

4    interrogation have recently rejected similar attempts by the government to conflate the tenor of

5    the interview with the issue of whether *Miranda* warnings were required.  In *United States v.*

6    *Savoy*, No. 10-310 (RCL), 2012 WL 3839154, at *26 (D.D.C. September 5, 2012), a district court

7    suppressed statements made during a custodial interrogation notwithstanding that the government

8    made "much of the fact that [the defendant] was in his own home when [the agent] questioned

9    him and thus should have felt comfortable in the familiar surroundings" and also pointed to the

10   agent's "demeanor, emphasizing that she never raised her voice to [the defendant] or in any way

11   attempted to intimidate him."  *Id*.  Central to the district court's reasoning in *Savoy* was the

12   recognition that the government's attempts to emphasize demeanor over substance ignored the

13   facts that numerous armed agents entered a residence at 6:00.a.m. when most people would be

14   sleeping or waking up, following up with an interview where agents were armed and the suspect

15   was accompanied by agents to the restroom.  *Id*.  Despite the alleged demeanor of the

16   participants, the court determined that this context clearly indicated that a reasonable person

17   would not have felt free to end the encounter.  *Id*.  Though Mr. Hogan may have acted friendly to

18   the agents, there can be no escaping the fact that he was under armed guard and his movements

19   effectively confined to the relatively small living room area of his apartment while the

20   questioning occurred.  (*See* Lee Decl., Ex. B (pictures of the living room.)  Statements made

21   during that custodial period must thus be suppressed.

22   **III.     CONCLUSION**

23         The *Craighead* Court observed that "a reasonable person interrogated inside his own

24   home may have a different understanding of whether he is truly free 'to terminate the

25   interrogation' if his home is crawling with law enforcement agents conducting a warrant-

26   approved search.  He may not feel that he can successfully terminate the interrogation if he knows

27   that he cannot empty his home of his interrogators until they have completed their search."

28   *Craighead*, 539 F.3d at 1083.  When analyzed in this critical context, and leaving aside the

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

**DEFENDANT'S REPLY I/S/O/ MOTION TO SUPPRESS**
United States v. Hogan, CR 10-0495 EJD-1

- 8 -

25429\3320985.1

1    irrelevant alleged facts the government relies upon in Opposition, Mr. Hogan was entitled to

2    *Miranda* warnings which he did not receive.  The Court should suppress all statements obtained

3    during the course of the June 18, 2007 FBI custodial interrogation.

4

5                                                  Respectfully submitted,

6

7    Date:  October 23, 2012                       */s/ William P. Keane*
                                                    WILLIAM P. KEANE
8                                                  Attorneys for Defendant Shawn Hogan

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANT'S REPLY I/S/O/ MOTION TO
SUPPRESS**
United States v. Hogan, CR 10-0495 EJD-1
- 9 -
25429\3320985.1